IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:21-CR-0137-B |
| JENNIFER LYNNE FAITH | |

## FACTUAL RESUME

In support of the defendant's plea of guilty to the offense alleged in Count One of the superseding indictment charging a violation of 18 U.S.C. §1958, Jennifer Lynne Faith, the defendant, her attorneys, Toby Shook and Cody Skipper and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the superseding indictment charging a violation of 18 U.S.C. § 1958, that is, Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire, the government must prove each of the following elements beyond a reasonable doubt:

*First:* That the defendant, with the intent that a murder be committed in violation of the laws of any State or the United States;

*Second:* As consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value;

*Third:* Caused another person to travel in interstate or foreign commerce; and

*Fourth:* Said conduct resulted in the death of another person.

Jennifer Lynne Faith, the defendant, Toby Shook and Cody Skipper, the

**Factual Resume - Page 1**

defendant's attorneys and the United States of America agree that the following facts are true and correct:

## Stipulated Facts

Jennifer Lynne Faith, the defendant, admits and acknowledges that on or about March 17, 2020, she reconnected online with her former high school boyfriend, D.R.L. At the time the defendant began communicating with D.R.L. she was living at 926 S. Waverly Drive, Dallas, Texas and D.R.L. was living in Cumberland Furnace, Tennessee.

Between March 17, 2020 and October 8, 2020, the defendant and D.R.L. engaged in numerous communications with each other. Those communications included emails, text messages, voice calls and written letters. The defendant stipulates that in April 2020, she advised a person known to her that "I am pretty much having a full-blown emotional affair" with D.R.L. She further stipulates that in April 2020, she sent a written letter to D.R.L. that stated the following: "In you, I have everything I've ever wanted. A man with so much strength and feelings and such integrity and feeling in your heart. The more I reconnect with you, the deeper I appreciate, love, and cherish what you are and what we have. In my eyes and in my heart, there is no one else on earth more genuine and precious than you --- my one and only love. There's no treasure on earth equal to what you're worth --- my soulmate."

The defendant stipulates that shortly after reconnecting with D.R.L. online, she learned that D.R.L. sustained a traumatic brain injury (TBI) and was disabled as a result of a roadside improvised explosive device (IED) while he was deployed as a soldier in

**Factual Resume - Page 2**

Iraq. On March 18, 2020, the defendant sent an email to D.R.L. and asked him "what effects do you have from your TBI? I have treated so many patients with TBI through the years, many of them soldiers." The defendant stipulates that beginning in approximately April 2020, she began to tell D.R.L. that her husband, James Faith Jr. (Jamie Faith) was physically and sexually abusing her. The defendant stipulates that the accusations of abuse she shared with D.R.L. were not true and that her husband had never physically or sexually abused her in any way.

The defendant stipulates that on April 6, 2020, D.R.L. used his personal email account to send a message to the defendant that advised her to "keep planning our lives together." D.R.L.'s email read as follows: "Hello Angel, I love and miss you so much. I know today has been horrible again. I am proud of you. You are so beautiful and lovely. I take you in my arms and hold you tight. Feel my love all around you. I am here still with you. Nothing he can do to stop my love for you. You are amazing. You are being so strong for us. You have my love always…nothing can stop that. He cannot destroy us no matter how hard he tries. I am with you. I am sending you my love and energy. I am here, not going anywhere. Keep dreaming of our life together. Keep planning our lives together. You are my soulmate and I NEED you in my life. You are still so sexy. My desire for you has only grown. To be the man to truly love you. Nothing can keep me from you. Angel I am your rock, your solace…I am here always. As You Wish D."

The defendant further stipulates that on April 9, 2020, she used the Google Chrome browser on her desktop computer at her home to create a fake email address in the name

Factual Resume - Page 3

of her husband ("jamiefaith511@gmail.com"). The defendant admits that, while posing as her husband, she used the fake email account to send multiple emails to D.R.L. on his personal email account that falsely claimed that Jamie Faith was physically and sexually abusing her. The defendant admits that she attached to some of the emails photographs that depicted images of extreme physical and sexual abuse being committed. The defendant admits that some of the images that she sent to D.R.L. were not images of her but were in fact images she downloaded from the internet.

The defendant stipulates that on May 13, 2020, she used the Google Chrome browser on her desktop computer at her home to create a second fake email address in the name of one of her best friends ("sxxxxxxx225@gmail.com"). The defendant admits that between May 13, 2020 and August 2020, she used the fake email account in the name of her friend to assume the friend's identity and send multiple emails to D.R.L. on his personal email account that falsely claimed that Jamie Faith was physically and sexually abusing the defendant.

The defendant admits that on May 20, 2020, D.R.L. sent the following email to the fake account believing that he was communicating with the defendant's friend. D.R.L. was in fact communicating with the defendant who was posing as her friend: "I still feel he is very fucked up in the head. I know I won't feel better about her situation until she is out of the house away from him or she lets me put a bullet in Jamie's head. I keep offering and she keeps telling me no…. LOL." The defendant admits and acknowledges that she used the fake email account in the name of her friend and replied to D.R.L.'s

Factual Resume - Page 4

email with the following: "Thanks for the update. I am also very concerned and if it were up to me, I would tell you to go for it with your idea ---lol; I'll give you an alibi."

The defendant stipulates that at approximately 7:33 am on October 9, 2020, she and Jamie Faith exited their house to walk their dog "Maggie." Approximately one minute into their walk, D.R.L. approached Jamie Faith from behind and shot him seven times with a handgun causing his death.

The defendant stipulates that D.R.L. traveled in interstate or foreign commerce prior to Jamie Faith's murder. The defendant further stipulates that the act of murder is illegal in the state of Texas.

The defendant admits and acknowledges that on November 11, 2020, she initiated a claim form with Metropolitan Life Insurance Company on behalf of the "Faith Family Trust" seeking approximately $629,000 in death benefits Jamie Faith had through his employer, American Airlines.

The defendant admits and acknowledges that both before and after the murder of her husband, she provided D.R.L. and members of his family with money and gifts. The defendant used her Venmo account, credit cards and other means to send things of value to D.R.L. and members of his family. Items of value included money, a Nintendo Switch gaming console, airline tickets for D.R.L. and his daughters to fly to Arizona and a new Samsung Q LED large screen television. The defendant admits that she used a BBVA Visa credit card and an American Express credit card to make many of the purchases and ship them to D.R.L. in Tennessee.

The defendant further admits and acknowledges that she used funds from a GoFundMe account entitled "Support for Jennifer Faith" to pay the monthly balances of the credit cards. On November 25, 2020, Jennifer Lynne Faith provided the credit card account information for both the BBVA Visa credit card and the American Express credit card to D.R.L. The defendant admits that she used her personal email account to send the following message to D.R.L. along with scanned images of the credit cards: "Here's both of my major CC's. AMEX has no limit and I think the Visa has like $35,000 limit. I pay them both off every month, so you never need to worry about them being declined. I scanned copies of both for you as well. PLEASE don't hesitate to use them for whatever you need, especially when it's stuff for the girls. Billing address is 926 S. Waverly Drive, Dallas, Texas 75208. I love you. Jenn."

The defendant stipulates that shortly after her husband's murder, she learned through witness accounts that her husband's killer had fled the area after the shooting in an older model black Nissan Titan pickup truck, with a distinctive white "T" sticker/decal on the lower left (driver's side) portion of the back window. A photo of that vehicle was released to the public by Dallas homicide detectives and ATF agents in an effort to locate the vehicle.

The defendant further stipulates that on December 2, 2020, she took part in a televised interview with a local news station in Dallas, Texas. During that interview, the defendant made a plea to the public and referenced the pickup truck with the sticker/decal in the back window. The defendant stated that finding the truck with the "T" sticker/decal

was "absolutely critical" and "there's got to be somebody who knows who has that truck." The defendant admits and acknowledges that at the time of the televised interview, she knew that the pickup truck that law enforcement agents were looking for belonged to D.R.L. who was living in Cumberland Furnace, Tennessee.

The defendant stipulates that two days after taking part in the news interview, she used her cellular telephone to send the following text message to D.R.L.: "Good Morning. I love you. So, I woke up in a little bit of a panic…. something is eating away at me telling me you need to take the sticker out of the back window of the truck. It might just be me over thinking or something, but I'll fee[l] a ton better if you take it off and clean the window really well." The defendant admits that approximately thirty minutes later she sent a follow up text message to D.R.L.: "I don't normally overreact like this. Ok. Sorry. I know you're going to think I am crazy, but it's REALLY nagging at me. I have a bad feeling and really think you need to get that sticker off ASAP…. like today. So, when I feel this way, I listen." D.R.L. responded, "I believe you…I love you…I will."

On December 5, 2020, D.R.L. removed the "T" decal/sticker from his black 2004 Nissan Titan pickup truck as requested by the defendant and used his cellular telephone to send the defendant the following text message: "Sticker done." The defendant responded, "Ok good. I love you too. So much. I don't want to be a pain about all of it…. just want you to be safe and I never want to lose you. Now life insurance is waiting on the detective as well. I feel SOOOOO much better. Can you tell if anything was ever

ther[e]." D.R.L. responded, "A little if you look close but i[n] 2 days…no you won't…with the dirt from the road it will be all fine."

The defendant stipulates that on December 29, 2020, she used her cellular telephone to send the following text message to D.R.L.: "Ok, so life insurance. They aren't processing the claim yet because when they spoke to Det Walton in November, he told them I couldn't be ruled out as a suspect. So, I called him and basically said "wtf?" He said, "oh-no-they must have misinterpreted." D.R.L. responded, "Oh no."

The defendant further stipulates that on January 7, 2021, D.R.L. used his cellular telephone to send her multiple text messages that included images of a residence in Tennessee and the following message: "It's not available till the first week in Feb, they have not even posted it yet even. I love you." The defendant admits she sent the following text message in response: "I love you too. So much. Let me know what you need to list me on the application. You'll probably need my SSN and DL# and you might need a copy of my DL. I can email all of that to you. Hopefully they can scan and email me the lease to sign and then I can send it back."

The defendant admits and acknowledges that on January 10, 2021, she was contacted by a detective with the Dallas Police Department and asked if she would agree to come in and talk to investigators. The defendant admits that following that call, she used her cellular telephone to text D.R.L. and tell him what she would tell investigators in the event they asked about him. "If asked about you, you are an old friend going through a divorce. We talk every night because I am helping/giving support with the girls since

Factual Resume - Page 8

you have sole custody. If it ever comes to it, I'll answer the same way about anything financial also…divorce killing you financially, so I am helping out where I can. Just so you and I have the same explanations. We talk after kids go to bed." D.R.L. responded, "Good idea…I like it." The defendant, replied "Just thinking in case they pulled phone records and ask." D.R.L. responded, "You are doing good."

The defendant admits and acknowledges that on or about February 2, 2021, she used her cellular telephone to request that a person known to her pass a message to D.R.L. who was in custody: "I hate to ask this, but I don't know what else to do. I need to let Darrin know I am with him, will always be with him, regardless of whatever has happened. I've just needed to be cautious because every communication is being monitored. Can you please pass along that message. I tried tonight after getting super drunk, but I am sure he doesn't believe it was me. Please tell him ASAP I will always be his." D.R.L. responded to the defendant's message with the following: "Thank you for sending me messages hearing from you gives me strength. You will always be cherished. I do know how you feel, together we can get through this I believe in my heart. Please stay strong for US. Your Knight always…. As You Wish."

The defendant admits and acknowledges she committed all of the essential elements of the offenses contained in Count One of the superseding indictment. The defendant further admits and understands that this Factual Resume is not intended to be a complete accounting of all the events that occurred. Rather this statement is limited to showing that a factual basis exists to support her plea of guilty.

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

*Rick Calvert*

_____
RICK CALVERT
Assistant United States Attorney
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: 214.659.8675
Email: rick.calvert@usdoj.gov

_____
JENNIFER LYNNE FAITH
DEFENDANT

_____
TOBY SHOOK
ATTORNEY FOR THE DEFENDANT

_____
CODY SKIPPER
ATTORNEY FOR THE DEFENDANT

**Factual Resume - Page 10**